IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARK DOUGLAS VANLUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-5080-DGK-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Pro se Plaintiff Mark Douglas Vanlue seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, et. seq. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

Vanlue objects to the Commissioner's denial of benefits. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

### Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for disability insurance benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Plaintiff, a fifty-six year-old man, filed his application for disability insurance benefits on January 15, 2008, alleging he became disabled as of September 16, 2007. Plaintiff claims disability due to pulmonary embolisms, fibromyalgia, depression, and amputated index and middle fingers on the right hand.

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

2

After reviewing the record and conducting a hearing, the ALJ found Plaintiff was not disabled. Plaintiff, who is representing himself in this lawsuit, contends that the ALJ erred by (1) concluding that his depression and fibromyalgia were not severe impairments; (2) improperly determining that Plaintiff's impairments did not meet or medically equal any listed impairment; (3) wrongly assessing his credibility; (4) improperly giving more weight to the opinion of the state agency medical consultant than his primary care physician; and (5) improperly finding that he could perform the light, unskilled work of counter clerk, rental clerk, and recreational equipment clerk. The Court finds no merit to these arguments.

**A.    Substantial evidence supports the ALJ's determination that Plaintiff's depression and fibromyalgia were not severe impairments.**

Plaintiff argues that the ALJ erred in concluding that his depression and fibromyalgia were not severe impairments. Pl.'s Br. at 2, 5-6. An impairment is "non-severe" if it has no more than a minimal impact on an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521(a). "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental capacities for understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)-(6). Slight abnormalities that do not significantly limit a basic work activity are considered "not severe." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989) (quoting *Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987)). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

Here the record supports the ALJ's determination that Plaintiff did not meet this burden. With respect to his depression, Plaintiff testified that his physical problems were only "a little depressing" (R. 31), and in January of 2008, he denied having depression, anxiety, hallucinations, or suicidal thoughts (R. 16, 262). Additionally, there is no evidence in the record that Plaintiff ever sought psychiatric treatment (R. 331), a fact which weighs against finding any disability. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Although Dr. Porter prescribed two medications, Cymbalta and Valium, to treat Plaintiff's mental health symptoms (R. 287, 341, 343, 345-46, 366), he also noted that Plaintiff's problems were almost exclusively physical. This conclusion is supported by the opinion of the State agency psychological consultant who opined that Plaintiff did not have a medically determinable mental impairment (R. 321).

The evidence also fails to establish that Plaintiff's fibromyalgia was a severe impairment. The evidence supporting a fibromyalgia diagnosis is limited to Plaintiff's report that he was "concerned" that he had fibromyalgia (R. 287) and speculation from his treating physician, Dr. Porter, that Plaintiff "could very well have it [fibromyalgia]" (R. 366). However, Dr. Porter never ordered any tests to determine if Plaintiff had fibromyalgia, and no doctor has ever diagnosed him with fibromyalgia. Consequently, substantial evidence in the record supports the ALJ's determination.

**B.     The ALJ properly determined that Plaintiff's impairments did not meet or equal the criteria of any listed impairment.**

Plaintiff argues the ALJ failed to properly analyze whether he had any impairments that met or medically equaled the criteria of any listed impairment. Pl.'s Br. at 3-4. But a claimant bears the burden of providing medical evidence that his impairments meet all of the medical

criteria contained in the listing, *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010), and he has not met this burden.

Plaintiff claims "a history of arthritic and joint complications," including carpal tunnel syndrome in his left arm, and "marked limitations in his upper extremities." Pl.'s Br. at 3. Plaintiff does not cite to any particular listing, however, and the only listing that appears to relate to this argument is Listing § 1.02. Plaintiff seems to be arguing that his partially amputated fingers on his right hand is an impairment that is medically equal to Listing § 1.02.1 for major dysfunction of a joint. Pl.'s Br. at 3. But a claimant can equal a listed impairment only when the medical findings are "at least equal in severity and duration" to a listed impairment. 20 C.F.R. § 404.1526(a). Here, the record is clear that the partial amputation of two fingers on Plaintiff's right hand (R. 154-55) is not severe enough to be equivalent to any impairment contemplated by Listing § 1.02.

Furthermore, Plaintiff did not have any other impairment that meets or equals the criteria for any other listing. The only support for Plaintiff's claim that he had spinal stenosis in his neck is a treatment note from April 2010, when the ALJ had already issued his decision. Plaintiff's suggestion that his pulmonary embolisms were the equivalent of a listed respiratory disorder is also meritless. There is simply no evidence in the record, such as an observed functional limitation or a diagnostic test, indicating that Plaintiff's respiratory ailments meet or equal the criteria for any listing. Consequently, the ALJ's determination that Plaintiff's impairments did not meet or equal the criteria of any listed impairment is supported by the record.

**C.     The ALJ properly assessed Plaintiff's credibility.**

Next, Plaintiff disputes the ALJ's credibility findings. Pl.'s Br. at 4-5. As a threshold matter, credibility questions concerning a plaintiff's subjective testimony are "primarily for the

ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).  In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions.  20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  When the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

In the present case the ALJ properly considered the long list of inconsistencies between Plaintiff's subjective allegations and the objective medical evidence (R. 15-17).  Despite Plaintiff's reports of disabling symptoms, the record does not contain any objective evidence establishing that he was unable to perform any work.  While Plaintiff has decreased fine motor ability due to partially amputated fingers on his non-dominant right hand, there is support in the record for the finding that the injury is not as severe as Plaintiff claims.  Less than a year after sustaining this injury, Plaintiff was medically cleared to return to medium duty work (R. 159). Additionally, a neurological evaluation of Plaintiff's left arm showed only mild to moderate left carpal tunnel syndrome, and no nerve entrapment (R. 269, 271).  And, while Plaintiff had pulmonary embolisms, his respiratory and cardiovascular exams were unremarkable (R. 262).

The ALJ also properly discounted Plaintiff's reports of pain.  A musculoskeletal examination in January 2008 revealed that Plaintiff had normal joints, range of motion, and muscle strength, and that he walked with a normal gait.  (R. 262).  The record also shows Plaintiff received limited and conservative treatment.  As the ALJ noted, Plaintiff never

underwent surgery for any of his impairments, including his carpal tunnel syndrome (R. 17), and he could control his pulmonary embolisms with medication (R. 263). The ALJ also considered the lack of debilitating side effects from Plaintiff's medication, as confirmed by his treatment notes (R. 17, 101). Finally, the record shows that one of Plaintiff's physician's, Dr. Ahmed Robbie, M.D., believed Plaintiff was exaggerating his symptoms "so he can get more Darvocet" (R. 269, 444). And an ALJ is entitled to discount a claimant's credibility who has exaggerated his symptoms. *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).

Because the ALJ articulated the inconsistencies upon which he relied in discrediting Plaintiff's subjective allegations, and because this finding is supported by substantial evidence in the record as a whole, the ALJ's credibility determination should be affirmed. *Halverson v. Astrue*, 600 F.3d 922, 932-33 (8th Cir. 2010).

**D.     The ALJ did not improperly weigh the different medical opinions.**

Plaintiff also contends the ALJ gave insufficient weight to the opinion of his primary care doctor, Dr. Edward Porter, D.O. Pl.'s Br. at 5-6. "Although a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control, since the record must be evaluated as a whole." *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999) (quoting *Cruze v. Chater*, 85 F.3d 1320, 1324-25 (8th Cir. 1996)). Treating source opinions are entitled to deference only when they are "well-supported by medically acceptable clinical laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record." *Juszcyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

In the present case, Dr. Porter completed a check-list form which made the following conclusions: Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; he could stand or walk for less than two hours in an eight-hour workday; he needed to periodically

alternate between sitting and standing; he had unspecified limitations in his ability to push and pull; he could occasionally kneel, but could never climb, balance, stoop, crouch, or crawl; and he could occasionally reach and handle, but could never finger or feel (R. 338-39, 363-64). As an initial matter, the Court notes the ALJ's residual functional capacity finding shows that he did give some credit to Dr. Porter's opinion. He limited Plaintiff to light work with limited fingering, occasional postural activities, and less than concentrated exposure to hazards (R. 16). These limitations show that the ALJ considered Dr. Porter's opinion and gave it credit to the extent it was supported by the evidence.

Although Plaintiff contends the ALJ should have completely accepted Dr. Porter's opinion because he treated Plaintiff "for several years" and "knew the Plaintiff's health conditions very well," Pl.'s Br. at 5, the ALJ did not err in declining to give Dr. Porter's opinion controlling weight, because Dr. Porter provided no elaboration or evidentiary support for the severe limitations he placed on Plaintiff's ability to work. *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011) (holding that an ALJ may discount a treating physician's conclusory opinion consisting of a series of check marks if it is contradicted by other objective medical evidence in the record); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion, which consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration). Simply put, the objective medical evidence in the record, such as the numerous diagnostic tests run on Plaintiff (R. 178, 181, 198-200, 219, 234, 253, 265, 269, 271, 297) and the unremarkable physical examinations of him, do not support the proposed limitations. Indeed, Dr. Porter's conclusions are inconsistent with his own treatment notes, which do not mention any severe problems, and Dr. Porter never restricted Plaintiff's activities (R. 278-88, 341-57, 366-69).

In contrast, the opinion of the State agency medical consultant, Dr. Donald Wantuck, M.D., was consistent with the record. Dr. Wantuck concluded Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and occasionally perform postural functions (R. 316, 318). The ALJ properly relied on his opinion because it was more consistent with the medical evidence than Dr. Porter's assessment that Plaintiff could not even perform sedentary work (R. 18). *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) ("[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence.") (internal quotations omitted). Consequently, there was no error here.

**E.     The ALJ did not err in finding that the Plaintiff could perform the light, unskilled work of counter clerk, rental clerk, and recreational equipment clerk.**

After determining Plaintiff's residual functional capacity, the ALJ concluded that he could not perform his past relevant work, but he could perform other work existing in significant numbers in the national economy (R. 19-20). In response to a hypothetical question that contained the ALJ's residual functional capacity finding, the vocational expert answered that such a person could perform the light, unskilled work of counter clerk, rental clerk, and recreational equipment clerk. The ALJ properly formulated the hypothetical question, thus, the expert's testimony that Plaintiff could perform other work constitutes substantial evidence supporting the Commissioner's decision. *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008).

Plaintiff argues he cannot perform several of the requirements of these jobs. Pl's Br. at 7. But, as discussed above, the ALJ properly discredited Plaintiff's reports of disabling limitations and Dr. Porter's opinion that Plaintiff had severe limitations, thus the ALJ did not err in utilizing

9

a hypothetical question that did not include those limitations. Because the ALJ's hypothetical question to the vocational expert contained all of plaintiff's credible limitations, there is substantial evidence on the record supporting the ALJ's finding that plaintiff could perform other work.

## Conclusion

After careful examination of the record as a whole, the Court finds the ALJ's determination is supported by substantial evidence on the record, and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  March 12, 2012                                   /s/ Greg Kays
                                                           GREG KAYS, JUDGE
                                                           UNITED STATES DISTRICT COURT